Silvia ROSALES, Plaintiff–Appellee,

v.

CITY AND COUNTY OF DENVER, Defendant–Appellant.

No. 02CA2432.

Colorado Court of Appeals, Div. II.

Feb. 26, 2004.

Silvern Law Offices, P.C., Thomas A. Bulger, Denver, Colorado, for Plaintiff–Appellee.

Helen Eckardt Raabe, City Attorney, John Eckhardt, Assistant City Attorney, Efrain M. Padro, Assistant City Attorney, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, the City and County of Denver, appeals the trial court's order denying its motion to dismiss, on governmental immunity grounds, the complaint brought by plaintiff, Silvia Rosales. We reverse in part and remand with directions.

Plaintiff was injured when a tree branch fell on her while she was picnicking at a City park. Plaintiff alleged that the City had not exercised reasonable care in maintaining the picnic area by failing to inspect and properly prune the tree and by placing picnic tables, benches, and other similar structures underneath the tree. Plaintiff asserted that the City's immunity was waived under § 24–10–106(1)(e), C.R.S.2003, of the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2003, for injuries resulting from a dangerous condition of a public facility located in a park or recreation area maintained by a public entity.

The City moved to dismiss plaintiff's complaint under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the GIA. The City argued that a tree or tree branch did not constitute a public facility for purposes of § 24–10–106(1)(e). In particular, the City argued that grouping the term "public facility" with "water facility," "gas facility," "sanitation facility," and "electrical facility" in § 24–10–106(1)(e) suggests that "public facility" refers only to man-made facilities.

In response, plaintiff argued that the tree constituted a part of the picnic area, and therefore, the tree was part of the public facility to be used by the general public for picnics and recreation.

The court found that a tree located in a park is a part of the overall use and enjoyment of the park. The court stated:

A tree located in a park or recreation area serves a purpose to the general public as well as an aesthetic value to the overall appearance of the park. A tree provides shade to a weary pedestrian, a cool place to enjoy a book, and an area to enjoy a picnic. It is reasonable to expect that one's safety is not at risk by partaking in such activity under a tree in a park, just as one would expect they (sic) are not at risk by using a restroom facility located in a park.

The trial court therefore concluded that the tree constituted a public facility and that the City's immunity had been waived under § 24–10–106(1)(e). The City then brought this appeal pursuant to § 24–10–108, C.R.S. 2003.

The City contends that the trial court erred in holding that the tree was a public facility located in the park. We agree.

The GIA provides that a public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort. Section 24–10–105, C.R.S.2003. The GIA then lists six types of actions that may result in a waiver of the public entity's immunity. Section 24–10–106(1), C.R.S.2003. As pertinent here, § 24–10–106(1)(e) waives immunity in an action for injuries resulting from "a dangerous condition of any ... public facility located in any park or recreation area maintained by a public entity."

Because governmental immunity under the GIA derogates Colorado's common law, we strictly construe the grant of immunity. *See Springer v. City & County of*

*Denver*, 13 P.3d 794 (Colo.2000). Consequently, we broadly construe the provisions waiving immunity in the interest of compensating victims of governmental negligence. *Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176 (Colo.2001).

Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. *See Springer v. City & County of Denver, supra.* That intent is determined by first construing the statutory language in accordance with its plain and ordinary meaning. *See Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). If the statutory language is unambiguous, there is no need to resort to interpretive rules of statutory construction. *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215 (Colo. 2002).

The phrase "public facility" is not defined in the GIA. However, the plain meaning of the term "public" is "a place accessible or visible to all members of the community." *Webster's Third New International Dictionary* 1836 (1986); *see also Farina v. City & County of Denver*, 940 P.2d 1004, 1008 (Colo. App.1996)(in determining whether airport medical clinic was a "public" hospital, the division noted that "so long as the facility is owned and operated by the public entity, is devoted to a public purpose, and is beneficial to a substantial segment of the public, it is a public facility or hospital under the GIA"). The common meaning of "facility" is "something (as a hospital, machinery, plumbing) that is built, constructed, installed or established to perform some particular function or to serve or facilitate some particular end." *Webster's, supra*, 812–13. Thus, these definitions imply that a public facility is something that is built or constructed to serve some public purpose. *See City & County of Denver v. Gallegos*, 916 P.2d 509 (Colo.1996)(holding that the determinative factor in defining a public facility is whether the facility was operated for the benefit of the public).

This interpretation of "public facility" is supported by the provision in § 24–10–106(1)(e) concerning "the natural condition of any unimproved property":

Nothing in this paragraph ... shall be construed to prevent a public entity from asserting sovereign immunity for an injury caused by the natural condition of any unimproved property, whether or not such property is located in a park or recreation area or on a highway, road, or street right-of-way.

This provision makes clear that the General Assembly did not intend to waive immunity unless a public facility is built or constructed in a park or recreation area.

Additionally, in § 24–10–106(1)(e), the phrase "public facility" is grouped with "public hospital," "jail," "water facility," "gas facility," "sanitation facility," and "electrical facility." Each of these listed facilities is built or constructed by a public entity to serve a particular purpose. This grouping supports the City's argument that the phrase "public facility" refers to a facility built or constructed by a public entity and does not refer to a natural object such as a tree. *See Jilot v. State*, 944 P.2d 566 (Colo.App.1996)(holding that the General Assembly, by placing "gas facility" in the context of other public utilities, expressed its intent to restrict the definition of that term to include only facilities that distribute natural gas); *Pack v. Ark. Valley Corr. Facility*, 894 P.2d 34 (Colo.App.1995)(reasoning that the GIA places public facilities in discrete groups for the purpose of waiving immunity for similar public entities in a similar manner).

It is reasonable to infer that if the General Assembly had intended to waive immunity for all dangerous conditions located in a park or recreational area, it would have provided that immunity was waived for "a dangerous condition in a park or recreation area," rather than for a dangerous condition of a *public facility* in a park or recreation area.

Plaintiff relies on *Montes v. Hyland Hills Park & Recreation District*, 849 P.2d 852 (Colo.App.1992), in support of her argument that a tree is a public facility in a park. We are not persuaded.

There, the division relied on a statute relating to recreational facilities districts that defines a "recreational facility" as "such land or interest in land as may be necessary, suitable or proper for park or recreational

purposes." *See* § 29–7–107, C.R.S.2003. However, *Montes* is distinguishable because there the issue was whether a golf cart was a public facility located in a park or recreation area.

Based on the use of the phrase "public facility" in § 24–10–106(1)(e), its common meaning, and its grouping with other facilities in that statute, we conclude that the General Assembly intended "public facility" to refer to a facility built or constructed by a public entity rather than a natural feature such as a tree.

Accordingly, we conclude that a tree in a park or recreation area is not a public facility. However, this does not end the inquiry because we further conclude that if a public entity incorporates a tree into a facility in such a manner that it becomes an integral part of the facility and is essential for the intended use of the facility, the tree may be a component of the public facility. *See State v. Moldovan,* 842 P.2d 220 (Colo.1992)(holding that a fence adjacent to a highway was a safety device that was an integral part of the highway). This is a question of fact that must be resolved based on the circumstances presented.

Here, although we conclude the trial court erroneously held that a tree is a public facility, the court did not determine whether the City had incorporated the tree into a public facility in such a manner that it became an integral part of the facility and was essential for the facility's intended use. Thus, a remand is necessary to resolve this issue.

Therefore, that part of the trial court's order finding a tree to be a public facility in a park is reversed, and the case is remanded for further proceedings and findings consistent with this opinion. That part of the order finding that the tree constituted a dangerous condition was not appealed and therefore will not be disturbed.

Judge ROTHENBERG and Judge PICCONE concur.