**Chad ANDERSON, Plaintiff–Appellee,**

v.

**HYLAND HILLS PARK AND RECREATION DISTRICT, Defendant–Appellant.**

No. 04CA0105.

Colorado Court of Appeals, Division II.

Dec. 30, 2004.

Rehearing Denied April 14, 2005.

Certiorari Denied Sept. 12, 2005.*

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2004.

* Justice KOURLIS would grant as to the following issues:

Whether the court of appeals erred in upholding the trial court's determination that the Screamin' Mimi attraction at Water World is a swimming facility as set forth in C.R.S. § 24-10-106(1)(f) to the trial court made its decision based on "the evidence in the light most favorable to the plaintiff."

Whether the court of appeals erred in failing to remand the issue of whether the Screamin' Mimi is a swimming facility for the purposes of C.R.S. § 24-10-106(1)(f) to the trial court as the evidence regarding that determination was in dispute and the trial court made its decision based on "the evidence in the light most favorable to the plaintiff."

Roger Fraley, Jr., Denver, Colorado, for Plaintiff–Appellee.

Richard L. Fuller, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Hyland Hills Park and Recreation District (Hyland Hills), appeals the trial court's judgment in favor of plaintiff, Chad Anderson. We affirm in part, reverse in part, and remand with directions.

Twenty-two year old Anderson injured his hand while riding the "Screamin Mimi" ride at Water World, an amusement park owned and operated by Hyland Hills. The injury apparently occurred because Anderson was holding on to the edge of the sled in which he was riding instead of the handles. Hyland Hills is a quasi-municipal corporation and political subdivision established by the Colorado Special District Act, § 32–1–101, et seq., C.R.S.2004.

Anderson later filed this action seeking compensation for his injuries. Following a bench trial, the court found that (1) the ride at Water World constituted a "swimming facility" for purposes of § 24–10–106(1)(f), C.R.S.2004; and (2) Hyland Hills was negligent. The court awarded Anderson damages plus interest and costs.

### I. Governmental Immunity Act

Hyland Hills contends the trial court erred in determining that the ride at Water World constituted a "swimming facility" for purposes of § 24–10–106(1)(f). We disagree.

Our primary task in construing a statute is to determine and give effect to the intent of the legislature. *Medina v. State*, 35

P.3d 443 (Colo.2001). To determine such intent, we look to the statutory language, giving words and phrases their plain and ordinary meaning, and interpreting the statute in a way that best effectuates the purpose of the legislative scheme. *Swieckowski v. City of Fort Collins,* 934 P.2d 1380 (Colo. 1997). Whether immunity has been waived under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2004, is an issue of subject matter jurisdiction that is resolved by the trial court under C.R.C.P. 12(b)(1). *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995).

■ The burden of proving jurisdiction is on the plaintiff, and the trial court's findings of fact supporting a determination under the GIA will not be reversed unless clearly erroneous. *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo. 1993).

■ Because governmental immunity derogates Colorado's common law, the GIA's waiver provisions are entitled to deferential construction in favor of victims injured by the negligence of governmental agents, while the immunity provisions are subject to strict construction. *Walton v. State,* 968 P.2d 636 (Colo.1998).

The phrase "swimming facility" is not defined in the GIA. However, the term "swim" means "to move through water by means of the limbs, fin, or tail; to move as though gliding through water"; and "swimming" means "the act, sport, or technique of one that swims." *American Heritage College Dictionary* 1394 (4th ed.2002). "Facility" was defined in *Rosales v. City & County of Denver,* 89 P.3d 507, 509 (Colo.App.2004), as "something (as a hospital, machinery, plumbing) that is built, constructed, installed or established to perform some particular function or to serve or facilitate some particular end." *See Webster's, supra,* at 812–13.

The evidence showed that the "Screamin Mimi" is a water-themed adventure ride in which participants generally wear bathing suits and ride a plastic, wheeled sled down a 120–foot track. They then glide part way across a pool of water which is approximately 100 feet in length, 20 feet wide, and 3.5 feet deep. After coming to a stop in the pool, participants commonly swim a short distance and then walk out of the pool. The top and bottom of the ride are supervised by trained lifeguards.

Based on this evidence, the court found that there was enough water in the pool for an individual to swim out of it after ending the ride, and that the "Screamin Mimi" constituted a "swimming facility" for purposes of waiving Hyland Hills' immunity under § 24–10–106(1)(f). Because the record supports the trial court's finding, we will not disturb it on review. *See Walton v. State, supra.*

In so holding, we recognize that the court stated that it was interpreting the evidence in the light most favorable to the plaintiff, which is an erroneous standard. However, because the evidence concerning the basic operation of the ride was undisputed, we conclude any error by the court in this regard was harmless.

## II. Amusement Ride or Premises Liability

■ However, we agree with Hyland Hills that the trial court erred in applying the standard of care applicable to amusement ride cases rather than that used in the premises liability statute.

The premises liability statute provides that in "any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section." Section 13–21–115(2), C.R.S.2004; *see Henderson v. Master Klean Janitorial, Inc.,* 70 P.3d 612 (Colo.App.2003)(noting that the premises liability statute provides the exclusive remedy against a landowner for injuries sustained on the landowner's property).

Under the statute, a landowner's duty to another depends upon whether the person qualifies as an invitee, a licensee, or a trespasser on the property. *See* § 13–21–115(2)–(3), C.R.S.2004. Whether an injured plaintiff is a trespasser, licensee, or invitee is a question of law that must be decided by the court,

whereas the ultimate issues of liability and damages are questions for the factfinder. Section 13–21–115(4); *Vigil v. Franklin,* 103 P.3d 322 (Colo.2004). In this case, it appears undisputed that Anderson was an invitee at the time of the accident. *See* § 13–21–115(5)(defining "invitee" as "a person who enters or remains on the land of another to transact business in which the parties are mutually interested . . . .").

An invitee, like Anderson here, is able to recover only for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which the owner actually knew or should have known. Section 13–21–115(3)(c), C.R.S. 2004.

It is undisputed that Hyland Hills is the owner and operator of Water World. Nevertheless, the court concluded "Hyland Hills is not a landowner within the meaning of [§ ] 13–21–115 because it operates an amusement facility and is subject to a higher standard than that established [by the premises liability statute]." The court thus applied the standard in CJI–Civ. 4th 12:13 (1998), which describes the common law duty of care for amusement devices when the user lacks freedom of movement. That instruction provides that it is the duty of the operator of the amusement device to exercise the highest degree of care a reasonably careful person could exercise under the same or similar circumstances, in keeping with the practical operation of such a device.

The notes on use for instruction 12:13 provide that it is to be used in amusement ride cases and for those kinds of devices in which users are required to give up their freedom of movement and control of the situation and submit themselves to the operator's control. Instruction 12:13 is based on *Lewis v. Buckskin Joe's, Inc.,* 156 Colo. 46, 396 P.2d 933 (1964), where the supreme court held that amusement ride operators must "exercise the highest degree of care commensurate with the practical operation" of the ride. *Lewis v. Buckskin Joe's, Inc., supra,* 156 Colo. at 56, 396 P.2d at 938–39.

After the trial in this case, however, the supreme court held that the unambiguous language of the premises liability statute evidenced the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property, and therefore, that common law landowner duties do not survive its enactment. *Vigil v. Franklin, supra.* Although *Vigil* involved a defense to liability (open and obvious danger), and this case involves the determination of which duty applies (the premises liability statute or the duty of the operator of an amusement device), we conclude that the same analysis applies to both circumstances and that *Vigil* is controlling.

Because Hyland Hills is a landowner, we conclude the trial court erred in applying the standard of care contained in instruction 12:13 rather than the standard of care in the premises liability statute. Accordingly, the judgment must be reversed and the case remanded with direction that, in the new trial, the court apply the requirements and standards of the premises liability act to the facts presented at trial.

In so holding, we reject Anderson's argument that we may affirm the judgment because "the sum of [the trial court's] rulings is that all elements of premises liability for an invitee like ... Anderson ... were established at trial." The court erred in applying the standard for operator of an amusement facility, and we conclude the judgment must be reversed and the case remanded so that the court can apply the correct standard.

### III. Trial Court's Findings

■ Hyland Hills next contends the trial court erred in certain of its findings of fact. We disagree, but conclude the findings of fact must be applied to the standards set forth in the premises liability act.

■ The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of L.A.C.,* 97 P.3d 363 (Colo.App.2004).

■ The duty issue is a question of law that must be resolved by the court applying

the proper standard, which we have concluded is set forth in the premises liability statute. As the court stated in *Vigil v. Franklin, supra,* "[w]here a defendant successfully argues no duty .... considering additional defenses under the breach, causation, and damages elements is entirely unnecessary."

At the bench trial here, the trial court heard conflicting evidence on each of the issues raised by Hyland Hills, and it is apparent from the findings that it was persuaded by Anderson's version of the events. The court found from Anderson's testimony and the incident report prepared by Hyland Hills' employees that the type of injury suffered by Anderson was not uncommon, thus discounting the testimony of Water World's general manager that there had been over 500,000 trips on the "Screamin Mimi" without a similar injury. The court further found that the signs informing persons how to ride the "Screamin Mimi" were ineffective, given the design of the sleds, and that despite Hyland Hills' training of its lifeguards, the upper lifeguard failed to make sure Anderson's hands were properly positioned on the sled before releasing him to go down the track. Contrary to Hyland Hills' contention, we conclude the trial court's findings have record support.

Thus, on remand, the court may use its prior findings of fact, but shall apply them in accordance with the standard in the premises liability statute.

## IV. Incident Report

 Highland Hills next contends the trial court erred in admitting the incident report into evidence because Anderson did not endorse it, as required by C.R.C.P. 16.1(k)(6). We note that 16.1 is substantially similar to proposed C.R.C.P. 1.1 cited by the parties here.

C.R.C.P. 16.1(k)(6) provides that:

*Trial Exhibits.* All exhibits to be used at trial which are in the possession, custody or control of the parties shall be identified and exchanged by the parties at least 30 days before trial. Authenticity of all identified and exchanged exhibits shall be deemed admitted unless objected to in writing within 10 days after receipt of the exhibits. Documents in the possession, custody and control of third persons that have not been obtained by the identifying party pursuant to document deposition or otherwise, to the extent possible shall be identified 30 days before trial and objections to the authenticity of those documents may be made at any time prior to their admission into evidence.

The trial court has broad discretion to admit relevant evidence, and absent an abuse of discretion, its evidentiary rulings will not be disturbed. *Scott v. Matlack, Inc.,* 39 P.3d 1160 (Colo.2002).

Hyland Hills endorsed the incident report before trial and could not have been surprised by the contents of the report. Nevertheless, Hyland Hills argues on appeal that it did not anticipate Anderson would present evidence from the report and was not prepared to rebut such evidence because it did not subpoena the authors of the report. Hyland Hills maintains that the trial court's reliance on the report under such circumstances denied it a fair trial. We are not persuaded.

Anderson offered the report into evidence early in the proceeding, and Hyland Hills objected to its admission because Anderson had not endorsed it. But Hyland Hills did not raise the objections it makes here, nor did it request a continuance or an opportunity to bring in the authors of the report to explain its content. Under these circumstances, we conclude the trial court did not abuse its discretion in admitting the report into evidence. *See Scott v. Matlack, Inc., supra.*

We affirm the court's rulings that the ride at Water World constituted a "swimming facility" for purposes of § 24–10–106(1)(f), C.R.S.2004, and that the incident report was admissible. However, the judgment in favor of Anderson is reversed, and the case is remanded with directions that the court apply the standards in the premises liability act to the facts presented at trial.

Judge NIETO and Judge LOEB concur.